# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| LILY HAGUE, an individual,<br>SECOND AMENDMENT FOUNDATION, INC.,<br>NEW JERSEY FIREARMS OWNERS SYNDICATE,<br><br><br>     Plaintiffs,<br><br>v.<br><br>PHIL MURPHY, in his official capacity;<br>MATTHEW J. PLATKIN, in his official capacity;<br>PATRICK J. CALLAHAN, in his official capacity;<br>RAYMOND S. SANTIAGO, in his official capacity;<br>GEORGE BAUMANN, in his official capacity;<br>PAMELA BONDI, in her official capacity,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil No. _____<br><br>**COMPLAINT** |

COME NOW the Plaintiffs complaining of the Defendants as follows:

1.     The parties to this case are as follows:

LILY HAGUE: a natural person, and a resident of the Freehold Township in the County of Monmouth, New Jersey, who is represented by and may be contacted through counsel for the Plaintiffs in this case.

SECOND AMENDMENT FOUNDATION, INC.: a non-profit organization whose principal place of business is located at 12500 NE 10th Pl., Bellevue, WA 98005.

NEW JERSEY FIREARMS OWNERS SYNDICATE: a non-profit organization whose principal place of business is located at 21 West Lincoln Avenue, 2nd Floor, Unit 1, Atlantic Highlands, NJ 07716.

PHIL MURPHY: sued in his official capacity as Governor of New Jersey, whose principal office is located at the Office of the Governor, State House, 125 W State Street, Trenton, NJ 08608.

PATRICK J. CALLAHAN: sued in his official capacity as Superintendent of the New Jersey State Police, whose principal office is located at 1040 River Rd Trenton, NJ 08628.

MATTHEW J. PLATKIN: sued in his official capacity as Attorney General of New Jersey, whose principal office is located at the Office of the Attorney General, RJ Hughes Justice Complex, Trenton, NJ 08625-0080.

RAYMOND S. SANTIAGO: sued in his official capacity as County Prosecutor for the County of Monmouth, New Jersey, whose principal office is located at Monmouth County Prosecutor's Office, 132 Jerseyville Ave., Freehold, NJ 07728.

GEORGE BAUMANN: sued in his official capacity as Chief of Police for Township of Freehold, New Jersey, whose principal office is located at Freehold Township Police Department, Municipal Plaza, Freehold, NJ 07728.

PAMELA BONDI: sued in her official capacity as Attorney General of the United States, whose principal office is located atU.S. Department of Justice, 950 Pennsylvania Ave NW, Washington, DC 20530.

2.      Plaintiff Lily Hague desires and intends to exercise the full scope of rights guaranteed to "the people" by the Second Amendment of the United States Constitution: to acquire, purchase, and possess a handgun for self-defense and other lawful purposes, to lawfully carry that handgun in public for self-defense, and acquire the ammunition necessary to use a handgun for all such purposes. The similarly situated members of Plaintiffs Second Amendment Foundation and Plaintiff New Jersey Firearms Owners Syndicate (collectively, "Institutional Plaintiffs") desire and intend to do the same. Based solely on their age, as adults 18 to 20 years old but under the age of 21, the laws and regulations of New Jersey and the laws and regulations of the federal government act in concert to unconstitutionally deprive them of these fundamental liberties.

3.      This is an action to uphold the right of these individuals to keep and bear arms as guaranteed by the United States Constitution. This right "guarantee[s] the individual right to possess and carry" firearms and "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

4.      In *Heller*, the U.S. Supreme Court defined "bear arms" as to "wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person." 554 U.S. at 584.

5.      In *McDonald v. City of Chicago*, 561 U.S. 742, 750, 791 (2010), the Supreme Court confirmed that the rights protected by the Second Amendment are "among those fundamental rights necessary to our system of ordered liberty" and are incorporated as applicable to the states through the Fourteenth Amendment.

6.      "The very enumeration of the right [to keep and bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Heller*, 554 U.S. at 634. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id*. at 634-35.

7.      The "central"—but not the only—holding of the Supreme Court in *Heller* was "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald*, 561 U.S. at 780. The Second Amendment also "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592. That is particularly true when it comes to handguns, as the *Heller* Court

has explicitly recognized the handgun as "the quintessential self-defense weapon" in the United States, and that a complete prohibition on their carry and use is necessarily invalid. *Id*. at 629.

8.      This individual right to possess and carry firearms, and in particular handguns, applies to the entirety of "the people." U.S. Const. amend. II ("A well regulated Militia, being necessary to the security of a free state, the right of the people to keep and bear Arms, shall not be infringed."). And that means it applies to all ordinary law-abiding adults. As the Supreme Court made clear years ago in *Heller*, this term "unambiguously refers to all members of the political community, not an unspecified subset." 554 U.S. at 580. More recently, in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), the Court recognized that "the people" applies to "ordinary, law-abiding, adult citizens." *Id.* at 31-32.

9.      As the Third Circuit further explained just earlier this year, in *Lara v. Commissioner Pennsylvania State Police*, 125 F.4th 428 (3rd Cir. 2025), "18-to-20-year-olds are among 'the people' for other constitutional rights such as the right to vote (U.S. Const. art. I, § 2; *id.* amend. XVII), freedom of speech, the freedom to peaceably assemble and to petition the government (*id.* amend. I), and the right against unreasonable searches and seizures (*id.* amend. IV)." *Id.* at 437.

10.      As *Lara* continued, "*Heller* cautions against the adoption of an inconsistent reading of 'the people' across the Constitution. *Lara*, 125 F.4th at 437

(citing *Heller*, 554 U.S. at 580.) "Indeed, wholesale exclusion of 18-to-20-year-olds from the scope of the Second Amendment would impermissibly render 'the constitutional right to bear arms in public for self-defense ... a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.' " *Id.* at 437-38 (quoting *Bruen*, 597 U.S. at 70 (internal quotations omitted). Therefore, "18-to-20-year-olds are, like other subsets of the American public, presumptively among "the people" to whom Second Amendment rights extend." *Id.* at 438.

11.    The *Lara* opinion is binding on this and all other district courts in this circuit. "[T]he holding of a [Third Circuit] panel in a precedential opinion is binding on subsequent panels" in order "to ensure the 'integrity of [the Third Circuit's] jurisprudence and the discharge of [its] function in guiding and informing the district courts.' " *Whitaker v. Herr Foods, Inc.*, 198 F.Supp.3d 476, 489 (E.D. Pa. 2016) (quoting *Dist. Council 47, Am. Fed'n of State, Cty. & Mun. Emps., AFL–CIO by Cronin v. Bradley*, 795 F.2d 310, 321 (3d Cir.1986)). "Accordingly, '[i]t is axiomatic that if another panel of the Court of Appeals for the Third Circuit is bound by a previous panel's construction of state law then district courts within the Third Circuit are also bound by that construction.' " *Id.* at 490 (quoting *Maxwell Stepanuk, Jr., D.O., P.C. v. State Farm Mutual Auto. Ins. Co.*, No. 92–6095, 1995 WL 553010, at *2 (E.D.Pa. Sept. 19, 1995).

6

12.     Indeed, even beyond *Lara*, "[f]our other federal appellate courts have determined that 18-to-20-year-olds are among 'the people' protected by the Second Amendment." *Lara*, 125 F.4th at 438 n.16 (citing *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 116 (10th Cir. 2024); *Worth v. Jacobson*, 108 F.4th 677, 692 (8th Cir. 2024), *reh'g denied*, *Worth v. Jacobson*, 2024 WL 3892865, (C.A.8 (Minn.) 2024); *Hirschfeld v. ATF*, 5 F.4th 407, 418-34 (4th Cir. 2021), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021); *Jones v. Bonta*, 34 F.4th 704, 717-21 (9th Cir. 2022), *opinion vacated on reh'g*, 47 F.4th 1124 (9th Cir. 2022)).

13.     "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. Moreover, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id*. (internal citations omitted, emphasis added.).

14.     As illustrated through the *Lara* court's thorough examination of the relevant history related to the firearms rights of adults between the age of 18 to 20, no historical basis exists to justify curtailing these individuals' right to purchase, otherwise acquire, possess, use, or carry handguns in public for lawful purposes based solely on their age. Quite to the contrary, as detailed herein, the relevant

history shows these individuals were not only freely afforded such rights during the relevant period but that they were often compelled by law to acquire, maintain, possess, and carry arms in public for lawful purposes.

15.    Yet, the laws and regulations of New Jersey deprive 18-to-20-year-olds of these fundamental rights in the acquisition, possession, use, and carrying of handguns (hereinafter defined and referred to as the "State Handgun Ban"). Further, the State Handgun Ban effectively incorporates the laws and regulations of the federal government that place additional prohibitions on the ability of such individuals to lawfully acquire such arms for lawful purposes (hereinafter defined and referred to as the "Federal Handgun Ban"). Therefore, individually and/or collectively these bans operate to unconstitutionally deprive 18-to-20-year-olds of their fundamental rights in the use of "the quintessential self-defense weapon."

16.    A declaration from this Court that the State Handgun Ban and the Federal Handgun Ban are unconstitutional, and injunction against both on that basis, is necessary to secure the fundamental liberties at stake for these law-abiding adults. Accordingly, Plaintiffs respectfully pray for that relief through this action.

## JURISDICTION AND VENUE

17.    The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 2201 as well as 42 U.S.C. § 1983. Venue is appropriate under 28 U.S.C.

§ 1391 because the individual plaintiff and most of the Defendants are domiciled in New Jersey, and the factual events giving rise to the claims occurred in New Jersey.

## PARTIES

### *Plaintiff Lily Hague*

18.    Plaintiff Lily Hague is a citizen of the United States and a resident of the Freehold Township in the County of Monmouth, New Jersey.

19.    Plaintiff Hague is 18 years of age.

20.    She is not disqualified from exercising the constitutional right to keep and bear arms under state or federal law.

21.    Plaintiff Hague has general concerns about securing her personal safety when traversing public spaces alone as a young woman of moderate stature, particularly at nighttime and in places known for drug activity or high-crime rates.

22.    She experiences such concerns and encounters such risks on a regular basis, as she travels alone to and from her place of employment as well as other extracurricular activities multiple times a week, often walking through parking lots and other public spaces in the late evening or nighttime when it is dark outside.

23.    Plaintiff Hague also travels to Hillside, New Jersey, most weekends to visit her boyfriend who lives there, and this requires that she travel through high-crime or generally unsafe areas. She occasionally travels to Newark, New Jersey as well, which exposes her to similar risks and safety concerns.

24.    Plaintiff Hague desires and intends to lawfully purchase or otherwise acquire a handgun, and to be able to lawfully carry that handgun in public for lawful purposes including self-defense, and beyond the severely limited exceptions for the acquisition of a handgun from an "immediate family" member and for the "temporary possession" of a handgun in specific types of supervised settings. She would do so but for Defendants' enforcement of the State Handgun Ban and Federal Handgun Ban which otherwise prohibit her and similarly situated 18-to-20-year-old adults from exercising these fundamental liberties in the absence of permitting and approvals that she and all other such individuals are precluded from obtaining based on their age alone. Those laws place Plaintiff Hague in reasonable fear that Defendants' enforcement of the same would subject her to criminal sanction for any attempt to engage in such activities without the required permitting and approvals.

25.    Plaintiff Hague is a member and supporter of Plaintiff Second Amendment Foundation and Plaintiff New Jersey Firearms Owners Syndicate.

### *Plaintiff Second Amendment Foundation, Inc.*

26.    Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit educational foundation incorporated under the laws of the State of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through educational and legal action

programs. SAF has over 720,000 members and supporters nationwide, including many members in New Jersey.

27.    The purpose of SAF includes education, research, publishing, and legal action focusing on the constitutional right to privately own and possess firearms under the Second Amendment, and the consequences of gun control. This Court's interpretation of the Second Amendment directly impacts SAF's organizational interests, as well as SAF's members and supporters in New Jersey aged 18 to 20, who enjoy exercising their Second Amendment rights. SAF brings this action on behalf of itself, its members, and supporters who possess all the indicia of membership, and similarly situated members of the public. Many of SAF's individual New Jersey members and supporters have been adversely and directly harmed and injured by Defendants' enforcement of the laws complained of herein.

28.    The interests that SAF seeks to protect are germane to its purpose. Indeed, the New Jersey statutes challenged herein have denied, and will continue to deny responsible, peaceable, law-abiding adults their fundamental, individual right to keep and bear arms enshrined under the Second and Fourteenth Amendments of the U.S. Constitution. Defendants' actions and failures alleged herein have caused SAF to dedicate resources that would otherwise be available for other purposes to protect the rights and property of its members, supporters, and the general public,

including by and through this action. The individual Plaintiff to this action—as described in the preceding paragraphs—is a member and supporter of SAF.

### *Plaintiff New Jersey Firearms Owners Syndicate*

29.    Plaintiff New Jersey Firearms Owners Syndicate ("NJFOS") is a non-profit social welfare organization formed to advocate for the preservation of the right to keep and bear arms for all peaceable people who reside in the State of New Jersey. NJFOS has over 4,000 members who predominantly reside in the State of New Jersey. NJFOS carries out its mission through education, lobbying, and engaging in litigation when New Jersey law is incongruous with the U.S. Constitution.

30.    Plaintiff NJFOS brings this action on behalf of itself, its members, and supporters who possess all the indicia of membership, and similarly situated members of the public.

31.    Many of NJFOS's individual New Jersey members have been adversely and directly harmed and injured by Defendants' enforcement of the laws complained of herein.

32.    Plaintiff Hague is a member and supporter of Plaintiff NJFOS.

### *Defendant Phil Murphy*

33.    Defendant Phil Murphy is the duly elected Governor of New Jersey.

34.    As Governor, the executive power of the State is vested in Defendant Murphy. N.J.S. Const. Art. 5, § 1. In that capacity, he is charged with "tak[ing] care

that the laws be faithfully executed" and he is granted the power "to restrain violation of any constitutional or legislative power or duty, by any officer, department or agency of the State." N.J.S Const. Art. 5, § 1, ¶ 11.

35.     Therefore, the power to enforce the State laws and regulations at issue (i.e., the State Handgun Ban), including the laws and regulations that effectively incorporate the federal laws and regulations at issue (i.e., the Federal Handgun Ban), is ultimately vested in Defendant Murphy, along with the power and the duty to restrain any violation of constitutional rights being perpetrated by any state official through the enforcement of the same.

36.     Defendant Murphy is sued in his official capacity.

### *Defendant Matthew J. Platkin*

37.     Defendant Matthew J. Platkin is the duly appointed Attorney General of New Jersey.

38.     Defendant Platkin was nominated and appointed by the Governor, Defendant Murphy, with the advice and consent of the Senate to serve during the term of office of the Governor. N.J.S. Const. Art. 5, § 4, ¶ 3; N.J.S. § 52:17B-2.

39.     As Attorney General, Defendant Platkin is the head of the Department of Law and Public Safety, N.J.S.A. §§ 52:17B-2 & 52:17B-5, with the "general responsibility for the department's operations."  N.J.S.A. § 52:17B-4.

13

40.    The Department of Law and Public Safety includes the New Jersey State Police, and thus Defendant Platkin holds and exercises statewide criminal jurisdiction to investigate and prosecute any indictable offense. *See,* State of New Jersey, Department of Law & Public Safety, Meet Attorney General Platkin, https://www.njoag.gov/about/meet-attorney-general-platkin/ ("[The Department's] sweeping responsibilities include investigating and prosecuting crimes, representing the State's interests in court, enforcing strong consumer protection and civil rights statutes, regulating important industries and overseeing over 38,000 law enforcement officers throughout the state.").

41.    Therefore, under his appointment by Defendant Murphy to lead the Department of Law and Public Safety, Defendant Platkin is responsible for overseeing the administration of the State laws at issue (i.e., the State Handgun Ban), including the laws and regulations that effectively incorporate the federal laws and regulations at issue (i.e., the Federal Handgun Ban), as they are enforced by the New Jersey State Police and Defendant Colonel Patrick J. Callahan, Superintendent of the New Jersey State Police.

42.    Defendant Platkin is sued in his official capacity.

### *Defendant Colonel Patrick J. Callahan*

43.    Defendant Colonel Patrick J. Callahan is Superintendent of the New Jersey State Police. State of New Jersey, Department of Law & Public Safety, Office

14

of the Attorney General, New Jersey State Police. (See, https://www.nj.gov/njsp/division/superintendent-biography.shtml).

44.    As Superintendent of the New Jersey State Police, Defendant Callahan serves as "[t]he executive and administrative head of the Division of State Police." N.J.S.A. § 52:17B-7.

45.    The Division of State Police provides general police services, which include "all functions associated with the statewide enforcement of laws, the prevention of crime, the pursuit and apprehension of offenders, and the gathering of legal evidence to ensure conviction of such offenders." State of New Jersey, Department of Law & Public Safety, Office of the Attorney General, New Jersey State Police, Core Functions. (See, https://www.nj.gov/njsp/about/core-functions.shtml).

46.    Therefore, under the general oversight of Defendant Platkin, Defendant Callahan is responsible for the enforcement of the State laws at issue (i.e., the State Handgun Ban), including the laws and regulations that effectively incorporate the federal laws and regulations at issue (i.e., the Federal Handgun Ban).

47.    Defendant Callahan is sued in his official capacity.

### Defendant Raymond S. Santiago

48.    Defendant Raymond S. Santiago is the County Prosecutor for the County of Monmouth, New Jersey, the County of Plaintiff Hague's residence. (*See*

15

Monmouth County Prosecutor's Office, Meet the Prosecutor, https://mcponj.org/meet-the-prosecutor/).

49. Defendant Santiago was appointed by the Governor, Defendant Murphy, to the independent office of the County Prosecutor for Monmouth County and thus he generally acts as an independent officer. *See,* N.J.S. 52:17B-109 ("Except as provided in this act, the powers and duties conferred upon or required of the Attorney General by this act shall not be construed to deprive the county prosecutors of any of their authority in respect to criminal prosecutions, or relieve them from any of their duties to enforce the criminal laws of the State."). However, Defendant Santiago remains under the general supervision of and must cooperate with the Attorney General, Defendant Platkin. *See,* N.J.S.A. 52:17B-103 ("The Attorney General shall consult with and advise the several county prosecutors in matters relating to the duties of their office and shall maintain a general supervision over said county prosecutors with a view to obtaining effective and uniform enforcement of the criminal laws throughout the State.").

50. In his independent role as County Prosecutor, Defendant Santiago "is responsible for the prosecution of crimes committed in the county" and has "authority to use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws." *Yurick v. State*, 184 N.J. 70, 79 (2005); *See Also,* Monmouth County Prosecutor's Office, Meet the

16

Prosecutor,    https://mcponj.org/meet-the-prosecutor/    (Defendant    Santiago "oversees" the County's law enforcement agency, which consists of assistant prosecutors, detectives, and "nearly four dozen municipal police departments and one college police department serving Monmouth County's approximately 645,000 residents").

51.    Therefore, Defendant Santiago is responsible for the prosecution of alleged violations of the State laws at issue (i.e., the State Handgun Ban), including the laws and regulations that effectively incorporate the federal laws and regulations at issue (i.e., the Federal Handgun Ban).

52.    Defendant Santiago is sued in his official capacity.

### Defendant George Baumann

53.    Defendant George Baumann is Chief of Police for Township of Freehold, New Jersey, the Township of Plaintiff's residence. Township of Freehold, New Jersey. (*See* Staff Directory, https://freeholdhealth.org/directory.aspx?EID=23).

54.    In his capacity as Chief of Police for the Freehold Township, Defendant Baumann serves the statutorily-designated role of overseeing and administering for residents of the Freehold Township the process of obtaining permits to carry handguns, including accepting applications, investigating the applicant, and granting or denying the issuance of permits for the Town's residents, pursuant to N.J.S.A § 2C:58-4(b)-(d) of the State's statutory permitting scheme, discussed *infra*; Township

17

of Freehold, New Jersey, Firearms Applications for Freehold Township Residents, https://shorturl.at/5caS1 (directing applicants to the State's Firearms Application and Registration System (FARS) to pursue applications related to firearms).

55.    Therefore, Defendant Baumann is responsible for receiving and acting upon any application for a permit to carry a handgun submitted by an 18-to-20-year-old adult resident of the Town, like Plaintiff Hague, and, absent the relief sought herein, he is required to reject any such application on the basis of the person's age alone.

56.    Defendant Baumann is sued in his official capacity.

### *Defendant Pamela Bondi*

57.    Defendant, Pamela Jo Bondi, as Attorney General of the United States, is sued in her official capacity. In her role as Attorney General, Bondi is directly responsible for enforcing federal firearms laws and regulations, including those at issue here (i.e., the Federal Handgun Ban).

58.    Defendant Bondi and her subordinates individually and collectively act to enforce the Federal Handgun.

## ALLEGATIONS COMMON TO ALL CLAIMS

**New Jersey's General Statutory Scheme Regulating Firearms**

59.    New Jersey broadly regulates the acquisition, possession, carry, and use of handguns, shotguns, rifles, and virtually all "firearms"[1] through a permitting scheme that essentially conditions the lawful exercise of such firearms-related activity on one's ability to meet the statutorily created requirements of the scheme. It outlaws the knowing "possession [of] any handgun [in public], including any antique handgun, without first having obtained a permit to carry the same as provided in N.J.S.A. 2C:58-4," and it outlaws   the knowing possession of "any rifle or shotgun without having first obtained a firearms purchaser identification card in accordance with the provisions of N.J.S.A. 2C:58-3."  N.J.S.A. § 2C:39-5(b)-(c). A select class of law enforcement, military, and government personnel is exempt from this possessory prohibition. N.J.S.A. § 2C:39-6(a). All ordinary, law-abiding citizens are subject to the general prohibition, save for a limited set of narrow exceptions that carve out only the following activities:

- The possession of "antique firearms" and "antique cannons" for purposes of formal exhibitions or demonstrations. N.J.S.A § 2C:39-6(d).

---

[1]    "Firearm" is defined to include "any handgun, rifle, shotgun, machine gun, automatic or semi-automatic rifle, or any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectable ball, slug, pellet, missile or bullet, or any gas, vapor or other noxious thing, by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances," as well as "any firearm which is in the nature of an air gun, spring gun or pistol or other weapon of a similar nature …" N.J.S.A. § 2C:39-1(f).

- The "keeping or carrying about" of a firearm on one's "place of business, residence, premises or other land owned or possessed by the person" or "carrying the same" from the place where the firearm is purchased, to or from a place where the firearm is repaired, or to, from, or between the person's residence and place of business, provided the firearm is "carried unloaded and contained in a closed and fastened case, gunbox, securely tied package, or locked in the trunk of the automobile in which it is being transported," in accordance with section N.J.S.A. 2C:39-6(g). N.J.S.A. § 2C:39-6(e).

- The carrying of firearms "necessary for target practice," "in going to or from a place of target practice," by a member of a "rifle or pistol club organized in accordance with the rules prescribed by the National Board for the Promotion of Rifle Practice," provided the firearm is carried unloaded and in a secured container in accordance with section N.J.S.A. 2C:39-6(g). N.J.S.A. § 2C:39-6(f)(1).

- The carrying of a firearm or knife "in the woods or fields or upon the waters of this State for the purpose of hunting, target practice or fishing," to and from the location of such hunting, target practice, or fishing, provided the person holds the requisite license for any hunting and fishing and that the firearm is transported unloaded and in a secured container in accordance with section 2C:39-6(g). N.J.S.A. § 2C:39-6(f)(2)-(3)(a).

- The transportation of a firearm to or from a target range, authorized place for the purpose of practice, match, target, trap or skeet shooting exhibition, or a formal event organized for the exhibition or display of firearms, provided the firearm is transported unloaded and in accordance with section 2C:39-6(g). N.J.S.A. § 2C:39-6(f)(3)(b)-(c).

- The "temporary possession" of a handgun, rifle, or shotgun "for the sole purpose of target practice, trap or skeet shooting, or competition upon," N.J.S.A. § 2C:58-3.1(a), the "temporary possession" of a shotgun or rifle "in the woods or fields or upon the waters of this State for the purposes of hunting," § 2C:58-3.1(b), or the "temporary possession" of a firearm "for the purpose of training and participating" in a certified training course, § 2C:58-3.2(a), provided in all instances the person in temporary possession of the firearm "meet[s] the qualifications set forth in subsection c. of

20

N.J.S.A. 2C:58-3 for obtaining or holding a firearms purchaser identification card or a handgun purchase permit," N.J.SA. §§ 2C:58-3.1(d) & 2C:58-3.2(c).

- The "keeping or carrying about" of a firearm on a private or commercial aircraft or a boat, or the transportation of the same "to or from the aircraft or boat for the purpose of installation or repair of a visual distress signaling device approved by the United States Coast Guard." N.J.S.A. § 2C:39-6(f)(4).

60.    Beyond these narrow exceptions, as an ordinary law-abiding citizen of New Jersey, one cannot lawfully "sell, give, transfer, assign or otherwise dispose of, nor receive, purchase, or otherwise acquire a handgun" without "first secur[ing] a permit to purchase a handgun," N.J.S.A. § 2C:58-3(a)(1), one cannot lawfully "sell, give, transfer, assign or otherwise dispose of, nor receive, purchase, or otherwise acquire" a rifle or a shotgun without a "firearms purchaser identification card," N.J.S.A. § 2C:58-3(b)(1), and one cannot lawfully "carry a handgun in a holster concealed on their person" (other forms of carrying, including open carry, are prohibited) without "a valid permit to carry a handgun" issued pursuant to state law, N.J.S.A. § 2C:58-4(a).

61.    Further, for anyone "who is not a licensed retail dealer" (i.e., ordinary people), any transaction involving the sale, gift, transfer, assignment, disposal, receipt, purchase, or other acquisition of a handgun, rifle, or shotgun shall be conducted "through a licensed retail dealer." N.J.S.A. § 2C:58-3(a)(2) & (b)(2). For ordinary people, the sole exceptions to these regulations on firearms transactions are

for "transactions between members of an immediate family"[2] and for instances of "temporary possession" in accordance with N.J.S.A.2C:58-3.1(d) and N.J.S.A. 2C:58-3.2(c) discussed above.[3] N.J.S.A. § 2C:58-3(a)(2)(a) & (d), N.J.S.A. § 2C:58-3(b)(2)(a) & (d).

62.    Ordinary people must satisfy several criteria to obtain a carry permit:

- Applicants must submit to the chief police officer of the municipality where they reside (or to the superintendent of the State Police if there is no chief police officer) an application that contains their identifying information, "any other information the superintendent may prescribe for the determination of the applicant's eligibility," and which is "endorsed" by at least four people unrelated to the applicant who certify "the applicant has not engaged in any acts or made any statements that suggest the applicant is likely to engage in conduct, other than lawful self-defense, that would pose a danger to the applicant or others," N.J.S.A. § 2C:58-4(b)-(c);

- They must pay a $200.00 application fee, N.J.S.A.§ 2C:58-4(c);

- They must submit their fingerprints, which must be "taken and compared with any and all records maintained by the municipality, the county in which it is located, the State Bureau of Identification and the Federal Bureau of Identification," N.J.S.A. § 2C:58-4(c);

---

[2]    "Immediate family" means "a spouse, domestic partner as defined in section 3 of P.L.2003, c. 246 (C.26:8A-3), partner in a civil union couple as defined in section 2 of P.L.2006, c. 103 (C.37:1-29), parent, stepparent, grandparent, sibling, stepsibling, child, stepchild, and grandchild, as related by blood or by law." N.J.S.A. § 2C:58-3.

[3]    "Temporary possession" is permissible only in specified types of settings, like firearms training, hunting, or formal exhibitions, it must be under the supervision of the owner of the firearm, and the possession is limited to no more than eight consecutive hours within any 24-hour period. N.J.S.A. 2C:58-3.1(a)-(b) and N.J.S.A. 2C:58-3.2(b).

- Both the applicant and each person endorsing the applicant must submit to an interview by the chief police officer or the superintendent for purposes of determining "whether the applicant is likely to engage in conduct that would result in harm to the applicant or others," N.J.S.A. § 2C:58-4(c);

- Applicants must demonstrate they are "thoroughly familiar with the safe handling and use of handguns," N.J.S.A. § 2C:58-4(c);

- They must complete specific training requirements, N.J.S.A. § 2C:58-4(g);

- Applicants must obtain and maintain "liability insurance coverage insuring against loss resulting from liability imposed by law for bodily injury, death, and property damage sustained by any person arising out of the ownership, maintenance, operation or use of a firearm carried in public," N.J.S.A. §§ 2C:58-4(d)(4), 2C:58-4.3(a); and

- The chief police officer or superintendent must ultimately determine that the applicant has satisfied all these criteria. N.J.S.A. §§ 2C:58-4(d).

**New Jersey's Age-Based Firearms Restrictions**

63.     Despite the rigorous restrictions and requirements that New Jersey imposes on all its ordinary law-abiding citizens seeking to lawfully acquire, possess, and use firearms for lawful purposes, it categorically denies these basic rights to law-abiding peaceable 18-to-20-year-old adults even when they otherwise satisfy all the requirements for all the permitting necessary to acquire, possess, and use arms— save for the exceedingly narrow exceptions for an acquisition of a firearm from an "immediate family" member and for the fleeting instance of supervised "temporary possession" of a firearm. The State has statutorily barred such adults from lawfully

acquiring, possessing, or using any handgun based solely on their being under the age of 21, specifically as follows:

- Section **2C:58-6.1(a)** of the N.J.S.A. declares that "no person under the age of 21 years shall purchase, barter or otherwise acquire a handgun unless the person is authorized to possess the handgun in connection with the performance of official duties under the provisions of N.J.S.A. 2C:39-6" (i.e., capturing all such individuals except those who fall within the exemptions for law enforcement, military, and government personnel).

- To that end, N.J.S.A. section **2C:58-3(c)(4)** provides that "[a] handgun purchase permit … shall not be issued [¶] to any person under the age of 21 years for a permit to purchase a handgun."

- Relatedly, section **13:54–1.3(b)** of the New Jersey Administrative Code ("N.J.A.C.") states that "[n]o person, other than a licensed or registered retail or wholesale dealer shall receive, purchase, or otherwise acquire a handgun, unless that person possesses and exhibits a permit to purchase a handgun," section **13:54–2.3(a)(1)** states that "[n]o application for a permit to carry a handgun shall be approved by a chief police officer of a municipality, the Superintendent or the Superior Court, unless the applicant [¶] … is not subject to any of the disabilities which would prevent him or her from obtaining a permit to purchase a handgun," and then section **13:54–1.5(a)(4)** expressly disqualifies these adults from obtaining this permit ("A permit to purchase a handgun…shall not be issued…[¶] to any person under the age of 21 years for a permit to purchase a handgun").

- Similarly, N.J.S.A. section **2C:58-3.3(c)** declares that "[n]o person shall sell, give, transfer, assign, or otherwise dispose of handgun ammunition to a person who is under 21 years of age." ("Handgun ammunition" means "ammunition designed such that it may be used in a handgun, including ammunition specifically designed to be used only in a handgun." N.J.S.A. § 2C:58-3.3(a).)

- N.J.S.A. section **2C:58-6.1(b)** goes even further in blanketly prohibiting this entire group of adults (save only for the select few who fall within the exemptions for law enforcement, military, and government personnel) from engaging in otherwise lawful activities with any handguns, by

24

providing that "no person under the age of 21 years shall possess, carry, fire or use a handgun." And this general prohibition prevails except in a few narrow circumstances, under subdivision (b)(1) through (4):

- o When the person is "[i]n the actual presence or under the direct supervision of his father, mother or guardian, or some other person who holds a permit to carry a handgun or a firearms purchaser identification card…";

- o "For the purpose of military drill under the auspices of a legally recognized military organization and under competent supervision";

- o "For the purpose of competition, target practice, instruction, and training in and upon" an "approved" firing range "while under competent supervision"; or

- o "For the purpose of hunting during the regularly designated hunting season," with the proper licensure and training for hunting in the State.

64.    The only firearms that the State has not categorically barred ordinary, law-abiding 18-to-20-year-old adults from acquiring, possessing, or using are firearms other than handguns, i.e., rifles, shotguns, or other long guns—albeit subject to the same restrictive conditions that the State imposes on the rest of its law-abiding citizens seeking to acquire, possess, and use firearms in compliance with state law. *See,* N.J.S.A. § 2C:58-6.1(a) ("No person under the age of 18 years shall purchase, barter or otherwise acquire a firearm[.]"); N.J.S.A. § 2C:58-3(c)(4) (a firearms purchaser identification card "shall not be issued … [¶] [t]o any person under the age of 18 years for a firearms purchaser identification card"); N.J.S.A. § 2C:58-6.1(b) ("No person under the age of 18 years shall possess, carry, fire or use

a firearm except as provided under paragraphs (1), (2), (3) and (4) of this subsection[.]").)

65.    Violations of these handgun prohibitions carry stiff criminal sanctions:

- Acquisition of a handgun in violation of section 2C:58-6.1(a) constitutes a crime of the fourth degree, as provided in N.J.S.A. § **2C:58-6.1(c)**;

- Possession of a handgun without a handgun purchase permit, which 18-to-20-year-old adults are categorically disqualified from obtaining, in violation of section 2C:39-5(b)(1) shall result in "a term of imprisonment" without eligibility for parole, as provided in section **2C:39-5(h) & (i)**; and

- Any sale, gift, transfer, assignment, or other disposition of handgun ammunition to a person under 21 years of age, in violation of section 2C:58-3.3(c), constitutes a crime of the fourth degree, as provided in section **2C:58-3.3(e)**.

66.    The handgun prohibitions that the State imposes against this class of adults, and the related criminal sanctions for violation of the same—specifically, sections 2C:39-5(h) & (i), 2C:58-6.1(a), 2C:58-6.1(b), 2C:58-6.1(c), 2C:58-3(c)(4), 2C:58-3.3(c), and 2C:58-3.3(e) of the New Jersey Statutes Annotated, and sections 13:54–1.3(b), 13:54–1.5(a)(4), and 13:54–2.3(a)(1) of the New Jersey Administrative Code, which are highlighted in bold text above—are referred to as the "State Handgun Ban."

**The Federal Handgun Ban Incorporated Into the State Handgun Ban**

67.    New Jersey's firearms regulations, policies, and procedures require that the background checks in connection with transfers of handguns be conducted through Federal Firearms Licensees ("FFLs"). *See,* N.J.A.C. 13:54-3.13(6) ("In

26

addition to complying with the other requirements of this chapter, the retail dealer shall, prior to completing the sale or transfer of a handgun or frame, initiate a NICS check with the Division of State Police as defined in 27 CFR 478.11, which is incorporated by reference herein, as may be amended and supplemented."); Official Site of the State of New Jersey, New Jersey State Police, NICS ONLINE, https://www.njportal.com/njsp/nicsverification ("New Jersey National Instant Criminal Background Check System is only for use by licensed State of New Jersey Firearm Dealers possessing a Federal Firearms License (FFL) authorized to conduct business with the New Jersey Police NICS Unit."); Official Site of the Town of Readington, New Jersey, Firearms, Frequently Asked Questions, https://www.readingtontwpnj.gov/firearms/firearms-faq ("ALL TRANSFER OF FIREARMS MUST BE DONE THOUGH [*sic*] A FEDERAL FIREARMS LICENSE HOLDER."). The background check process conducted through NICS is administered by the Federal Bureau of Investigation. FBI, Criminal Justice Information Services Law Enforcement Enterprise Portal, https://www.cjis.gov/nics/PRServletSSO.[4]

---

[4]     Section 25.6 of Title 28 of the Code of Federal Regulations describes who may access NICS and for what purposes. In the relevant part, the regulation states:

(j) Access to the NICS Index for purposes unrelated to NICS background checks required by the Brady Act. Access to the NICS Index for purposes unrelated to NICS background checks pursuant to 18 U.S.C. 922(t) shall be limited to uses for the purposes of:

68.    Federal law prohibits FFLs from selling or delivering handguns to individuals under the age of 21, pursuant to 18 U.S.C. section 922(b)(1):

> It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—[¶] … any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age.

*See also,* Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Minimum Age for Gun Sales and Transfers, available online at https://shorturl.at/2fzYe (Handguns: "Under federal law, FFLs may not sell, deliver or otherwise transfer a handgun or handgun ammunition to any person the transferor knows or has reasonable cause to believe is under the age of 21.").

---

(1) Providing information to Federal, state, tribal, or local criminal justice agencies in connection with the issuance of a firearm-related or explosives-related permit or license, including permits or licenses to possess, acquire, or transfer a firearm, or to carry a concealed firearm, or to import, manufacture, deal in, or purchase explosives;

(2) Responding to an inquiry from the Bureau of Alcohol, Tobacco, Firearms, and Explosives in connection with a civil or criminal law enforcement activity relating to the Gun Control Act (18 U.S.C. Chapter 44) or the National Firearms Act (26 U.S.C. Chapter 53); or,

(3) Disposing of firearms in the possession of a Federal, state, tribal, or local criminal justice agency.

69.    Similarly, section 478.99(b)(1) of Title 27 of the Code of Federal Regulations declares, in relevant part:

> A licensed importer, licensed manufacturer, licensed dealer, or licensed collector shall not sell or deliver (1) any firearm or ammunition to any individual who the importer, manufacturer, dealer, or collector knows or has reasonable cause to believe is less than 18 years of age, and, if the firearm, or ammunition, is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the importer, manufacturer, dealer, or collector knows or has reasonable cause to believe is less than 21 years of age….

70.    If an FFL violates this provision, he or she "shall be fined under this title, imprisoned not more than five years, or both." 18 U.S.C. § 924(a)(l)(D).

71.    Collectively, these statutes and regulations—18 U.S.C. 922(b)(1), 18 U.S.C. § 924(a)(l)(D), and 27 C.F.R. § 478.99(b)(1)—are referred to as the "Federal Handgun Ban." The Federal Handgun Ban does not *itself* completely foreclose acquisition of a handgun by an individual 18 to 20 years of age. While "[a] *federal firearms licensee* may not … sell or deliver a firearm other than a shotgun or rifle to a person the licensee knows or has reasonable cause to believe is under 21 years of age," "ATF"), Minimum Age for Gun Sales and Transfers, https://shorturl.at/2fzYe (italics added), "[a]n individual between 18 and 21 years of age may acquire a handgun from an *unlicensed individual* who resides in the same state, provided the person acquiring the handgun is not otherwise prohibited from receiving or possessing firearms under federal law," ATF, Firearms Q&As, May an individual between the ages of 18 and 21 years of age acquire a handgun from an unlicensed

individual who is also a resident of that same state?, https://shorturl.at/0a2Y2 (italics
added). However, where, as here, a state mandates that all private handgun transfers
be conducted through FFLs who are bound to comply with the Federal Handgun Ban
(save only for the limited circumstance of transfers between immediate family
members and the very limited durations of permissible "temporary possession"), it
effectively incorporates the Federal Handgun Ban, as New Jersey has done under
N.J.A.C. 13:54-3.13(6) and its general policies and procedures related to conducting
background checks in connection with handgun transfers.

72.    In other words, the Federal Handgun Ban leaves open but a tiny window
of opportunity for 18 to 20 year old adults to lawfully acquire handguns and New
Jersey slams this window shut with the State Handgun Ban in all instances except
where a person might be able to obtain a handgun within his or her immediate family
or briefly use one in the highly restrictive nature of "temporary possession." And
this is true regardless of whether they satisfy all the other statutory requirements that
are sufficient for other adults to lawfully acquire handguns through FFLs.

73.    Indeed, the exception for intra-family transfers is illusory to non-
existent in terms of providing a viable path to the acquisition of a handgun. First, the
18-to-20-year-old must actually have an "immediate family" member who is both
willing and able to transfer a handgun to him or her. Second, assuming this is even
true, the handgun must be suitable for that person's safe use as a weapon for self-

defense and other lawful purposes, based on the specific size, shape, and features of the handgun. For many 18-to-20-year-old New Jersey residents, one or both of these essential circumstances will not be true, thereby completing cutting off their ability to acquire a handgun for self-defense or lawful purposes—besides during an instance of mere "temporary possession," which is even more illusory of an exception.

74.    The Second Amendment right *guarantees* ordinary law-abiding adults the right to acquire a handgun. Hard stop. It is no answer for the federal government to say that it forecloses one avenue of acquisition, just as it is no answer for the State of New Jersey to say it does not foreclose *all* other avenues of acquisition. They must justify the foreclosure of the avenues they have foreclosed. *Heller*, 554 U.S. at 629 ("It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed.") To do that, they must prove the restrictions are "consistent with this Nation's historical tradition of firearm regulation," *Bruen*, at 597 U.S. at 1, which they simply cannot do under the controlling Supreme Court authority.

**LEGAL FRAMEWORK**

75.    The Second Amendment to the United States Constitution declares: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

31

76.    The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *Heller*, 554 U.S. at 584; *McDonald*, 561 U.S. at 778; *Caetano v. Massachusetts*, 577 U.S. 411, 421 (2016) (Alito, J., concurring); *Bruen*, 597 U.S. at 20, quoting *Heller*, 554 at 592 (The right " 'guarantee[s] the individual right to possess and carry weapons in case of confrontation.' ").

77.    The Second Amendment is applicable to the States as incorporated through the Due Process Clause of Fourteenth Amendment because the right to "keep and bear Arms" is a fundamental constitutional right essential to ordered liberty. *McDonald*, 561 U.S. at 778.

78.    The Supreme Court has defined all of the Second Amendment's key terms. As already discussed, "[t]he people" means, at a minimum, "all Americans"—i.e., the entire "class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community"—and "Arms" includes "all instruments that constitute bearable arms." *Heller*, 554 U.S. at 580–82.

79.    "We turn to the phrases 'keep arms' and 'bear arms'. Johnson defined 'keep' as, most relevantly, '[t]o retain; not to lose,', and '[t]o have in custody.' Johnson 1095. Webster defined it as '[t]o hold; to retain in one's power or possession.' No party has apprised us of an idiomatic meaning of "keep Arms." Thus,

the most natural reading of 'keep Arms' in the Second Amendment is to 'have weapons.' " *Heller*, 554 U.S. at 582.

80.    "[T]he core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms." *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017). For this reason, the right to keep and bear arms includes the right to purchase them. And thus, laws that burden the ability to purchase arms burden Second Amendment rights. *Jones v. Bonta*, 34 F.4th 704, 716 (9th Cir. 2022), *opinion vacated on reh'g*, 47 F.4th 1124 (9th Cir. 2022).

81.    In *Bruen*, the Supreme Court held unconstitutional New York's "good cause" licensing requirement because a State may not condition the right to publicly carry handguns on a citizen's "special need for self-defense." *Bruen*, 597 U.S. at 38.

82.    The "general right to public carry" cannot be restricted absent "exceptional circumstances." *Bruen*, 597 U.S. at 70. This is because the Second Amendment "presumptively protects" carrying firearms in public for lawful purposes, including self defense. *Id*. at 33.

83.    To determine whether a state's firearm restriction is constitutional following *Bruen*, if a law restricts conduct falling within the scope of the Second Amendment's text, that law is presumed invalid and can only be saved if the government proves "the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding

generation to modern circumstances.' " *United States v. Rahimi*, 602 U.S. 680, 681 (2024) (quoting *Bruen*, 597 U.S. at 29).

84.    This analysis requires asking *both* "how and why" past laws burdened the Second Amendment protected right, and historical laws can only serve as true analogues if their modern comparators are "comparably justified." *Bruen*, 597 U.S. at 29; *Rahimi*, 602 U.S. at 709 (Gorsuch, J., concurring) (quoting *Bruen*, 597 U.S. at 29) (" 'Why and how the regulation burdens the right are central to this inquiry.' "). "Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Rahimi*, 602 U.S. at 692.

85.    It is the government's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms" in this sense. *Bruen*, 597 U.S. at 19; *see also id.* at 60 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). If the government fails to meet its burden, then the restrictions at issue must be declared unconstitutional and enjoined.

86.    As the Third Circuit recently confirmed in the binding precedent of *Lara*, when considering both *Bruen* and *Rahimi*, "18-to-20-year-olds are, like other subsets of the American public, presumptively among 'the people' to whom Second Amendment rights extend." *Lara*, 125 F.4th at 438. Again, multiple federal circuits

34

have so held. *Worth*, 108 F.4th at 692 ("Ordinary, law-abiding 18 to 20-year-old Minnesotans are unambiguously members of the people."); *Firearms Policy Coalition, Inc. v. McCraw*, 623 F. Supp. 3d 740, 748 (N.D. Tex. 2022), appeal dismissed sub nom. *Andrews v. McCraw*, No. 22-10898, 2022 WL 19730492 (5th Cir. Dec. 21, 2022) ("[T]he Court concludes that law-abiding 18-to-20-year-olds are a part of "the people" referenced in the Second Amendment."); *Jones*, 34 F.4th at 720 ("We agree with Plaintiffs: the historical record shows that the Second Amendment protects young adults' right to keep and bear arms."); *Hirschfeld*, 5 F.4th at 440 ("[T]he Constitution's text, structure, and history affirmatively prove that 18-yearolds are covered by the Second Amendment.").

87.    Other courts have reached similar conclusions post-*Bruen* specifically with respect to the federal law restricting the sale of handguns to adults under 21, finding this law unconstitutional. Explaining this conclusion in *Brown v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 704 F. Supp. 3d 687, 706 (N.D.W. Va. 2023), *appeal pending*, the court stated: "In summary, because Plaintiffs' conduct—the purchase of handguns—'fall[s] [within] the Second Amendment's 'unqualified command' and the challenged statutes and regulations are not 'consistent with the Nation's historic tradition of firearm regulation,' the Court FINDS 18 U.S.C. §§ 922(b)(1) and (c)(1) facially unconstitutional and as applied to Plaintiffs. Plaintiffs having demonstrated there is no genuine dispute of material fact and that they are

entitled to judgment as a matter of law, their Motion for Summary Judgment [ECF No. 28] is GRANTED." *Id.* at 706. The Fifth Circuit also recently reversed a trial court's judgment in favor of the federal government, finding that the federal law restricting the sale of handguns to adults under 21 is unconstitutional: "In sum, 18 U.S.C. §§ 922(b)(1), (c)(1) and their attendant regulations are unconstitutional in light of our Nation's historic tradition of firearm regulation." *Reese v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 127 F.4th 583, 600 (5th Cir. 2025).

88.    These conclusions about laws restricting the rights of adults under the age of 21 from acquiring and/or carrying handguns in public are unassailable.

89.    When examining a challenged law, the court must consider the relevant time period and whether the historical analogues proffered from that period are relevantly similar, assessing both "the how and why" of the proffered analogues. *Bruen*, 597 U.S. at 29. The relevant time period to examine for the existence of any relevantly similar analogues that restricted Second Amendment rights in the same way is 1791. *Bruen*, 597 U.S. at 34 (quoting *Heller*, 554 U.S. at 634-35, italics added in *Bruen*) (" 'Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*.' "). The Third Circuit expressly so held in *Lara*. 124 F.4th at 441 ("We reiterate, for the reasons stated in our earlier opinion, *Lara*, 91 F.4th at 133-34, that the constitutional right to keep and bear arms should be understood according to its public meaning in 1791…"); *see also United States*

*v. Connelly*, 117 F.4th 269, 281 (5th Cir. 2024) ("Offering three laws passed scores of years post-Ratification (and a fourth passed nearly half a century beyond that) misses the mark by a wide margin."); Mark Smith, *Attention Originalists: The Second Amendment Was Adopted In 1791, Not 1868*, 24 Harvard J.L. & Pub. Pol'y Per Curiam 31 (2022) ("No Supreme Court case has ever looked to 1868 as the principal period for determining the meaning of an individual right in the Bill of Rights. If periods after 1791 are consulted at all, it is only to confirm that subsequent authorities, generally very shortly after the Founding, remained consistent with the public understanding in 1791."). By contrast, 20th century and late 19th century statutes and regulations "cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, at 66 & n.28.

90.    Thus, restrictions on the right to keep and bear arms dating after the Civil War and after the adoption of the Fourteenth Amendment in 1868 may be confirmatory of earlier legislation, but they cannot be used alone to provide the appropriate historical analogue required by *Bruen*. Legislation, history, and events following the Civil war can confirm but cannot limit, reduce, or infringe upon the rights as understood in 1791. In other words, only those restrictions with roots at the time of the Founding are sufficiently "enduring" and "well-established" to comport with the Second Amendment's "unqualified command." *Bruen*, 597 U.S. at 17 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

91.    The required historical analysis is fundamentally a legal inquiry that examines legal history, which is appropriately presented in briefs and pleadings. *See Bruen*, 597 U.S. at 25 (noting that the historical inquiry presents "legal questions" that judges can address) (emphasis in original); *See also, Id*. at 33 n.8 (rejecting the dissent's suggestion that further fact-finding was needed and holding that the Court's ruling did not "depend on any of the factual issues raised by the dissent"). Accordingly, the required analysis does not require factfinding by a court.

92.    Applying these principles here straightforwardly compels the conclusion that the challenged laws are unconstitutional.

93.    At the time of the Founding and in 1791, ordinary adults under 21 had all the rights of any other adult otherwise. As the Third Circuit explained in *Lara*, "Founding-era laws reflect the principle that 18-to-20-year-olds are 'able-bodied men' entitled to exercise the right to bear arms[.]" 125 F.4th at 441 (quoting *Heller*, 554 U.S. at 596). Indeed, the *Lara* court thoroughly examined the common lot of various firearms restrictions that governments have proffered in defense of these restrictions targeting law-abiding adults under the age of 21, and it rejected the lot as insufficiently analogous to uphold such restrictions under either *Bruen* or *Rahimi*.

94.    With the exception of one, all the laws on which the government relied in *Lara* were "enacted at least 50 years after the ratification of the Second Amendment" and "irreconcilabl[y] conflict[ed] with the Founding-era laws," such

38

that none of these mid-to-late nineteenth century laws bore any weight in a proper analysis. *Lara*, 125 F.4th at 441-42. The single law from the relevant period to which the government could point was a Pennsylvania law from 1721, which *generally* prohibited "carry[ing] any gun or hunt[ing] on the improved or inclosed lands of any plantation other than his own[.]" *Id.* at 442. This law "primarily focused on preventing Pennsylvanians from hunting on their neighbors' land, not on restricting the right to publicly carry a gun," and even more distinctively, "to the extent the statute did burden the right to carry a gun in public, it did so *without singling out 18-to-20-year-olds*, or, for that matter, any other subset of the Pennsylvania population." *Id.* at 443 (italics added). In other words, only a single law from the "catalogue of statutes" the government marshalled in support of its age-based restrictions fell within the relevant period, and yet that one law bore "no near equivalence or significant[ly] analog[uos]" relationship to the modern day restriction. *Id.* at 443.

95.    The government in this case stands no better chance of having its similar age-based restrictions upheld. Indeed, as the *Lara* court further observed, "[a]gainst the sparse record of state regulations on 18-to-20-year-olds at the time of the Second Amendment's ratification, we can juxtapose the Second Militia Act, passed by Congress on May 8, 1792, a mere five months after the Second Amendment was ratified on December 15, 1791." 125 F.4th at 443. "The Act required all able-bodied men to enroll in the militia and to arm themselves upon

turning 18." *Id.* at 443-44 (citing Second Militia Act of 1792 § 1, 1 Stat. 271 (1792)). "That young adults had to serve in the militia indicates that founding-era lawmakers believed those youth could, and indeed should, keep and bear arms." *Id.* at 444.

96.    Moreover, any contrary conclusion is further undermined when it is juxtaposed with the long-established fundamental rights that these individuals hold as members of the "national community," *Heller*, 554 U.S. at 580–82, e.g., the right to vote (U.S. Const. art. I, § 2; *id.* amend. XVII), freedom of speech, the freedom to peaceably assemble and to petition the government (*id.* amend. I), and the right against unreasonable searches and seizures (*id.* amend. IV)." *Lara*, 125 F.4th at 437. They are also entitled to join the military at the age of 18 (even at the age of 17 with parental consent) and put their lives on the line for our country. 10 U.S.C. §505(a).

97.    Simply put then, under the Supreme Court's authority, Defendants cannot meet their collective burden to justify their prohibition on the purchase, acquisition, possession, carrying in public, or other lawful use of handguns for those who are 18 to 20 years of age. Simply no historical analogue exists for prohibiting adults under 21 from purchasing, acquiring, possessing, or carrying handguns nor for banning otherwise lawful commerce between dealers and adults under 21.

**COUNT ONE – 42 U.S.C. § 1983 CLAIM FOR VIOLATION OF THE SECOND AND FOURTEENTH AMENDMENT AGAINST ALL DEFENDANTS EXCEPT PAMELA JO BONDI**

98.    The foregoing paragraphs are incorporated herein.

99.    The Second Amendment guarantees an individual right to keep and bear arms.

100.    The Second Amendment is incorporated into the Fourteenth Amendment, allowing Second Amendment violation claims to be brought against state and local actors. *McDonald*, 561 U.S. 742.

101.    The Second Amendment's guarantee is of particular significance when it comes to handguns, which the Supreme Court has explicitly recognized as "the quintessential self-defense weapon." *Heller*, 554 U.S. at 629.

102.    The Second Amendment unequivocally guarantees an individual right to acquire, keep, and carry arms for self-defense and all other lawful purposes.

103.    The State Handgun Ban and Defendants' enforcement of it impermissibly infringes upon the right of all law-abiding individuals aged 18 to 20 to keep and bear arms by making it impossible for them to lawfully acquire, possess, use, and/or carry handguns and handgun ammunition for lawful purposes in all instances save for exceedingly narrow, largely illusory statutory "exceptions."

104.   American history and tradition confirm that all law-abiding adults, including those under the age of twenty-one, were members of "the people" who were understood to enjoy full Second Amendment rights in the Founding Era.

105.   Over 200 colonial and Founding-era militia statutes throughout the seventeenth and eighteenth centuries not only permitted but also *mandated* that persons between 18 and 20 years of age acquire and keep arms to perform their duty to serve in the militia and to otherwise protect their communities. *See generally* David Kopel & Joseph Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. Ill. U. L.J. 495 (2019) (detailing over 200 such militia statutes).

106.   No colonial or Founding Era law restricted the right of law-abiding adults under the age of 21 from acquiring, possessing, using, or carrying arms purely based on age.

107.   There is and never has been any constitutionally grounded basis for restricting the Second Amendment rights of law-abiding 18-to-20-year-olds.

108.   Thus, the statutory and regulatory provisions that comprise the State Handgun Ban are unconstitutional on their face and as-applied to the law-abiding Plaintiff and the similarly situated members of the institutional Plaintiffs.

109.   But for the individual and/or collective operation of the State Handgun Ban and the Federal Handgun Ban, adult citizens of New Jersey between the ages of 18 and 20 would be able to lawfully purchase or otherwise acquire handguns—either

from an FFL or a private individual—and to possess, use, and carry handguns in public for self-defense and all other lawful purposes, in the same manner and to the same extent as their adult counterparts 21 years of age or older.

110.   The State Handgun Ban and Federal Handgun Ban operate to categorically deprive adults between the ages of 18 and 20 from being able to lawfully exercise their otherwise fully protected rights to purchase, acquire, possess, use, and carry handguns in public, for self-defense or any other lawful purpose.

111.   The individual and/or collective operation of the State Handgun Ban and the Federal Handgun Ban, and Defendants' actual and threatened enforcement of the same, should and must be declared unconstitutional and enjoined under the text of the Constitution itself, as well as our Nation's history and tradition.

112.   Plaintiff Hague is a peaceable, law-abiding adult New Jersey citizen who meets all the qualifications to apply for and obtain a permit to purchase a handgun and a permit to carry a handgun, with the sole exception of the age requirements imposed by the laws at issue.

113.   The similarly situated members and supporters of the Institutional Plaintiffs also meet all the qualifications to apply for and obtain a permit to purchase a handgun and a permit to carry a handgun, with the sole exception of these age requirements.

114.    Plaintiff Hague and the similarly situated members and supporters of the institutional Plaintiffs desire and intend to exercise the full scope of rights guaranteed to "the people" by the Second Amendment of the United States Constitution: to acquire, purchase, and possess a handgun for self-defense and other lawful purposes. To keep and/or bear handguns in New Jersey, they must first be afforded a viable path to legally acquire them and to legally carry them in public.

115.    To do so in New Jersey, these individuals must be eligible to apply for and obtain a permit to purchase a handgun and a permit to carry one, there must be viable avenues of lawful transfer, either through an FFL or a private party who may legally transfer handguns to law-abiding adults between 18 and 20 years of age, and they must be able to obtain a permit to carry the arm in public for lawful purposes, without being limited to the exceedingly narrow exceptions for acquisitions from "immediate family" members and for instances of mere "temporary possession."

116.    But for New Jersey's age-based restrictions for the requisite permitting, and the general ban on the ability of adults under 21 to lawfully acquire and carry a handgun, Plaintiff Hague and the similarly situated, law-abiding, adult members of the institutional plaintiffs would acquire and carry handguns for all lawful purposes, beyond the severely limited circumstances of acquisitions from an "immediate family" member and during periods of supervised "temporary possession."

## COUNT TWO – CLAIM FOR VIOLATION OF THE SECOND
## AMENDMENT AGAINST DEFENDANT PAMELA JO BONDI

117.   The foregoing paragraphs are incorporated herein.

118.   The Second Amendment guarantees an individual right to acquire, keep and bear arms.

119.   This is of particular significance when it comes to handguns, which the Supreme Court has explicitly recognized as "the quintessential self-defense weapon." *Heller*, 554 U.S. at 629.

120.   The Federal Handgun Ban and Defendant Bondi's enforcement of it impermissibly infringes upon the right of all law-abiding adults aged 18 to 20, including the Plaintiff Hague, and the similarly situated members and supporters of the Institutional Plaintiffs, to keep and bear arms, by foreclosing the primary method of acquiring a handgun—commercial purchase—which effectively results in a ban on the ability to acquire handguns and handgun ammunition when enforced in combination with the State Handgun Ban under which only an exceedingly narrow avenue otherwise exists for anyone of this age to lawfully acquire a handgun.

121.   American history and tradition confirm that all peaceable law-abiding adults, including those under the age of 21, were members of "the people" understood to enjoy full Second Amendment rights in the Founding Era.

122.   Over 200 colonial and Founding-era militia statutes throughout the seventeenth and eighteenth centuries not only permitted, but affirmatively mandated

that persons between the ages of 18 and 20 acquire and keep arms. *See generally* David Kopel & Joseph Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. Ill. U. L.J. 495 (2019) (detailing over 200 such militia statutes).

123.   No colonial or Founding Era law restricted the right of law-abiding adults under the age of 21 from acquiring, possessing, using, or carrying arms purely based on age.

124.   There is and never has been any constitutionally grounded basis for restricting the Second Amendment rights of law-abiding 18-to-20-year-olds.

125.   Thus, the statutory and regulatory provisions that comprise the Federal Handgun Ban are unconstitutional on their face and as-applied to the Plaintiffs and the similarly situated members of the institutional Plaintiffs who are foreclosed from lawfully acquiring a handgun in all instances, except in the exceedingly narrow circumstance of an acquisition from an "immediate family" member, given the operation of the Federal Handgun Ban in conjunction with the State Handgun Ban.

## PRAYER FOR RELIEF

Wherefore, the Plaintiffs respectfully request the following relief:

A) A declaratory judgment that the restrictions set forth sections 2C:39-5(h) & (i), 2C:58-6.1(a), 2C:58-6.1(b), 2C:58-6.1(c), 2C:58-3(c)(4), 2C:58-3.3(c), and 2C:58-3.3(e) of the New Jersey Statutes Annotated, and sections 13:54–1.3(b), 13:54–1.5(a)(4) of the New Jersey Administrative Code, against individuals between

18 and 20 years of age seeking to purchase, otherwise acquire, possess, use, and carry in public handguns and handgun ammunition for lawful purposes are unconstitutional on their face and as applied to Plaintiff Hague and the similarly situated members and supporters of the Institutional Plaintiffs;

B) A permanent injunction enjoining all of the Defendants (except Defendant Bondi), their officers, agents, servants, employees, and all persons in active concert or participation with them and all who have notice of the injunction from enforcing the restrictions in sections 2C:39-5(h) & (i), 2C:58-6.1(a), 2C:58-6.1(b), 2C:58-6.1(c), 2C:58-3(c)(4), 2C:58-3.3(c), and 2C:58-3.3(e) of the New Jersey Statutes Annotated, and sections 13:54–1.3(b), 13:54–1.5(a)(4) of the New Jersey Administrative Code, against individuals between 18 and 20 years of age seeking to purchase, otherwise acquire, possess, use, and carry in public handguns and handgun ammunition for lawful purposes;

C) A declaratory judgment that the restrictions in 18 U.S.C. § 922(b)(1), 18 U.S.C. §924(a)(l)(D), 18 U.S.C. § 922(c), 27 C.F.R. § 478.99(b)(1) against individuals between 18 and 20 years of age seeking acquire handguns and handgun ammunition for lawful purposes are unconstitutional on their face and as applied to Plaintiff Hague and the similarly situated members and supporters of the Institutional Plaintiffs;

D) A permanent injunction enjoining Defendant Bondi, her officers, agents, servants, employees, and all persons in active concert or participation with them and all who have notice of the injunction from enforcing the restrictions in 18 U.S.C. § 922(b)(1), 18 U.S.C. §924(a)(l)(D), 18 U.S.C. § 922(c), 27 C.F.R. § 478.99(b)(1) against individuals between 18 and 20 years of age seeking acquire handguns and handgun ammunition for lawful purposes;

E) In the alternative only to the relief requested in paragraphs C and D *supra*, a declaratory judgment and a permanent injunction enjoining Defendant Bondi and her officers, agents, servants, employees, and all persons in active concert or participation with them and all who have notice of the injunction from prohibiting the State of New Jersey and the New Jersey State Police from using the National Instant Check System ("NICS") for private party handgun transfers to eligible persons 18 to 20 years of age; and enjoining the remaining Defendants and their officers, agents, servants, employees, and all persons in active concert or participation with them and all who have notice of the injunction, from declining to approve private party handgun transfers to eligible persons 18 to 20 years-old due to their age, or for any claimed lack of access to the NICS system;

F) Attorneys' fees;

G) Costs;

H) Any such further relief that the Court deems just and equitable.

48

Dated: June 9, 2025          Respectfully submitted,

LAW OFFICES OF SHANNON GARRAHAN, P.C.

*/s/ Shannon Garrahan*

_____

Shannon Garrahan, Esq.
2 Forest Avenue-Second Floor
Oradell, New Jersey 97649
Phone: (201) 909-0700
Electronic Mail:   Shannonaal@msn.com


Raymond M. DiGuiseppe*
*Pro Hac Vice Application Forthcoming*
The DiGuiseppe Law Firm, P.C.
116 N. Howe Street, Suite A
Southport, NC 28461
Email: law.rmd@gmail.com
Phone: 910-713-8804